47 CCPA
## MINNESOTA MINING AND MANU- FACTURING COMPANY

### v.

## SPRAGUE ELECTRIC COMPANY.

Patent Appeal No. 6550.

United States Court of Customs and Patent Appeals.

June 8, 1960.

Rehearing Denied July 13, 1960.

282

Charles H. Lauder, St. Paul, Minn. (Mark W. Gehan, St. Paul Minn., of counsel), for appellant.

Connolly & Hutz, Wilmington, Del., Bennett H. Levenson, Washington, D. C. (Werner H. Hutz, Wilmington, Del., of counsel), for appellee.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and WILLIAM H. KIRKPATRICK, Judge.[*]

MARTIN, Judge.

This appeal is from the decision of the Assistant Commissioner affirming the dismissal of an opposition instituted by Minnesota Mining and Manufacturing Company (hereinafter MMM) to the registration of "Unipak" by Sprague Electric Co. for "an assembly of various electrical capacitors within a metal housing." MMM is the registrant and prior user of "Unipak" for "plastic bags used for resinous material having principal usage in electrical insulating and connecting."[1]

Appellant sells a number of products for use in the electrical industry. Its "Unipak" mark is used in connection with a clear plastic bag having two sections and a rupturable membrane therebetween so that when the membrane is broken the resin components in the two sections can be kneaded in the bag and poured therefrom into a mold to surround and embed electrical splices, connections, etc. The resin is called "Scotchcast," the compartmented bag, "Unipak."

The Assistant Commissioner found that the parties' goods are advertised and sold to substantially the same purchasers and move through the same trade channels. She held that purchasers do not buy "Unipak" resin but rather "Scotchcast" resin in a "Unipak" bag and that they can identify the bag by stock number as well as by "Unipak." She stated:

"Considering the function which the trademark performs for each of the parties and the circumstances and conditions surrounding the purchase of the goods of the parties, it is concluded that there is no likelihood of purchaser confusion, mistake or deception."

It is MMM's position that "purchasers might well think that appellant *made* both products, particularly since appellant does manufacture a wide variety of dissimilar items for use by the electrical trade," and that the likelihood of confusion which exists between the marks is that of "confusion of businesses." There is nothing of record, it is stated, showing any special conditions and circumstances which eliminate the likelihood of confusion between the identical marks of the parties.

MMM contends that purchasers do order its resin by the "Unipak" mark and that the use of its house mark "Scotchcast" in conjunction with "Unipak" is immaterial to the issue of likelihood of confusion. It is alleged that the record shows the mark "Unipak" serves as a trademark not only for the bag itself, for which the mark has been registered, but also for the bag with its resin content. Appellant maintains that the discriminating purchaser doctrine may not be utilized in this case because the marks are identical, citing in support of this proposition Celanese Corporation of America v. E. I. Dupont De Nemours and Company, 154 F.2d 146, 33 CCPA 948, that the goods of the parties are capable of conjoint use, and that if a doubt arises as to likelihood of confusion it must be resolved against the newcomer.

[*] United States Senior Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge* O'CONNELL, pursuant to provisions of Section 294(d), Title 28 U.S.C.

[1] Registration No. 621,044 issued February 14, 1956, filed April 7, 1954.

Appellee alleges that appellant has failed to show that "Unipak" indicates the source of its resin. The evidence, it is argued, shows that "Unipak" is used as a container or size designation instead of as a means for identifying the origin of the contents of the package. Appellee's goods are said to be purchased with great care by discriminating purchasers and are so different from those of appellant that there is no possibility of confusion.

The mark "Unipak" is urged to be highly suggestive, as shown by twelve third party registrations, and so diluted that it is capable of denoting origin only with respect to specific products. For that reason appellee contends that appellant should not be permitted to preempt the use of "Unipak" on all kinds of electrical products. Appellee also maintains that because the MMM "Unipak" mark is a secondary mark it is not entitled to the scope of protection normally accorded a primary mark.

There is no merit in appellant's contention that likelihood of confusion as to the sources of the respective products exists. The evidence does not substantiate the claim that purchasers identify appellant's electrical and insulating resins by the mark "Unipak." If appellant's mark does not identify the source of its resins, it follows that there will be no confusion within the meaning of Section 2(d), 15 U.S.C.A. § 1052(d), between the sources of the resin and appellee's capacitors.

"Unipak" is used by appellant to identify and describe its container, not the source of its resins. Without exception, the many advertisements and other exhibits that appellant introduced in evidence show that "Unipak" modifies the container in which the resins are packaged, and that the resins themselves are identified by the mark "Scotchcast." Exemplary of this are: " 'Scotchcast' Resin No. 4 in the 'Unipak' Container; " "The 'Unipak' Container of 'Scotchcast' No. 4 Resin; " " 'Scotchcast' Resin No. 4 in the 'Unipak' Container Epoxy-type resin, packaged in a 'Unipak' Container, for field splicing."

Leonard A. Johnson, General Sales Manager of MMM's Electrical Products Division, gave the following testimony:

"Q32. Do some customers call for or refer to packages such as Exhibit 6 as 'Unipaks' ? A. Well, there are customers that could refer to this as just a Unipak. To them it's all Scotchcast resin, and they might want drums or cans, or they could write in, 'Just send me ten Unipaks, Size "B".'

"Q33. In other words, if they want drums, they order something different? How do they phrase orders for drums? A. They refer to them as drums. 'We're a nine drum customer,' or, 'We buy ten 5 gallon cans.' That's an industrial type customer, a maintenance and construction type of customer,—or, it could be an industrial customer would say that, 'We're using your Unipaks'.

"Q104. And does Minnesota Mining ever receive orders calling for a particular number of Unipaks? A. To my knowledge, they normally refer to it as Unipaks and give their size when ordering, *but it's always been in conjunction with size, not as Unipaks alone*". [Emphasis ours.]

It is apparent that appellant is endeavoring to condition the purchasing public to recognize "Scotchcast" as the identifying mark of its resins and "Unipak" as the type of container used for them. We are not convinced that MMM's registered "Unipak" mark has

been so used that it has acquired trademark significance with respect to the epoxy resins of its manufacture. And, although appellant sells various products to the electrical industry, we find nothing of record which satisfies us that those in that industry are, or will be led to associate appellant's "Unipak" mark with any of its products other than its plastic bags. As such, MMM's "Unipak" mark must be considered solely in the light of that for which it was registered, i. e., "Plastic bags used for resinous material having principal usage in electrical insulating and connecting."

With respect to MMM's plastic bags and Sprague Electric Company's capacitor assemblies, we are of the opinion that the following four circumstances, taken together, obviate likelihood of confusion, mistake or deception:

(1) The goods are of a widely diverse nature.

(2) "Unipak" as applied to the goods of both parties is so highly suggestive of unit packaging as to be almost descriptive and is therefore not a strong origin indicator. The suggestiveness of the mark is further evidenced by the third party registrations of record.

(3) Opposer's use of "Unipak," not as a trademark for its merchandise (which is "Scotchcast" resin), but as a secondary trademark only for the type of container in which that merchandise is sold.

(4) Applicant's "Unipak" industrial capacitor assemblies would be purchased with great discrimination by technical people who would know their origin.

Without the concurrence of these factors, which is somewhat unusual, the registration of an identical mark for goods moving in the same trade channels to the same purchasers could not ordinarily be justified.

We therefore *affirm* the decision of the Assistant Commissioner.

Affirmed.

WORLEY, Chief Judge, concurs in result.